| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, STATE OF COLORADO<br><br>Court Address:<br>1777 6th Street,<br>Boulder, CO 80302<br><br>PLAINTIFF(S):     **BRUCE FIFER,**<br><br>v.<br><br>DEFENDANT(S):   **TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA.** | |
| ▲COURT USE ONLY▲ | |
| *Attorney for Plaintiff*:<br>Ross S. Iakovakis, #44104<br>**RAMOS LAW**<br>10190 Bannock Street, Suite 200<br>Northglenn, Colorado 80260<br>Phone Number: (303) 733-6353<br>FAX Number: (303) 865-5666<br>E-mail: Ross@ramoslaw.com | Case Number:<br><br>Div: |
| **COMPLAINT WITH JURY DEMAND** | |

**COMES NOW,** Plaintiff, Bruce Fifer, by and through his attorneys, Ramos Injury Firm, and for his Complaint, state as follows:

**PARTIES**

1. At all times relevant, Plaintiff, Bruce Fifer ("Plaintiff," hereinafter), was and is a resident of the State of Colorado.

2. Upon information and belief, at all times relevant to the events described in the Complaint, Defendant Travelers Property Casualty Company of America (hereinafter, "Defendant"), was and is a foreign corporation authorized to do business, and doing business, in the state of Colorado.

**JURISDICTION AND VENUE**

3. Plaintiff incorporates by reference each allegation made in paragraphs 1 through 2 as though fully set forth herein.

4. Jurisdiction and venue are proper in the District Court for Boulder County pursuant to C.R.C.P. 98(c)(1).

## **GENERAL ALLEGATIONS**

5. Plaintiff incorporates by reference each and every allegation made in paragraphs 1 through 4 as though fully set forth herein.

6. On March 18, 2019, Plaintiff was driving a 2017 Chevrolet Silverado northbound on South Santa Fe Drive in Lane #2, near the 1200 block.

7. At the same time and place, Mr. Cole Jesson was driving on the same street, in the same location, directly behind the Plaintiff.

8. Mr. Jesson failed to pay attention to the conditions of traffic and the conditions of the road in front of him, and he collided with the rear end of the Plaintiff's vehicle.

9. As a result of Mr. Jesson's negligence and the afore-mentioned collision, Plaintiff suffered physical injuries, pain and suffering, loss of enjoyment of life, emotional distress, mental anguish, wage loss and had to undergo rehabilitation.

10. At all times relevant, Mr. Fifer carried underinsured motorist coverage ("UIM") through an auto-insurance policy issued by the Defendant.

11. At all times relevant, Mr. Jesson carried bodily injury insurance through Great West Farm Bureau in the amount of $50,000 per person, $100,000 per collision.

12. On September 14, 2020, Plaintiff settled with Mr. Jesson and Great West in the amount of his policy limits, $50,000, after receiving earlier consent from Defendant. That $50,000 settlement did not make the Plaintiff whole and left him with significant uncompensated damages.

13. Plaintiff, by and through his attorneys, received the $50,000 settlement check from Great West on December 16, 2020.

14. During the negotiation process with Great West, Plaintiff provided Defendant with sufficient information to investigate Plaintiff's UIM claim and was also actively engaged in negotiations with Defendant, and, presumably, Defendant was or should have been conducting its own UIM investigation.

15. Plaintiff originally placed Defendant on notice of a potential underinsured motorist claim via correspondence dated April 24, 2019.

16. Prior to the subject collision, Mr. Fifer had undergone a multi-level fusion of the lumbar spine on January 3, 2019 by Dr. Michael Madsen.

17. The medical records reflect that the surgery went well and, as of January 30, 2019, Plaintiff's pain levels were much improved and he was being treated with oral steroids and pain medication. X-rays from that date revealed the hardware from the surgery was in a good position.

2

18. Mr. Fifer was next seen by Dr. Madson on March 20, 2019, after the subject collision of March 18, 2019. Plaintiff cited lower back (lumbosacral) pain at that appointment.

19. Dr. Madsen ordered x-rays and a CT scan in order to diagnose and treat Plaintiff's pain complaints secondary to the collision.

20. Dr. Madsen reviewed the CT scan and found lucency around the distal end of the right S2 alar screw, and this finding concerned Dr. Madsen. Dr. Madsen opined that the subject motor vehicle collision may have "aggravated the transitional level."

21. Plaintiff returned to Dr. Madsen on May 22, 2019, stating that he was not able to walk as much as he used to after the surgery but before the collision, that he was not sleeping as well, and that he still was taking tramadol and Robaxin 4.5 months post-surgery.

22. At that May 22 appointment, Dr. Madsen was concerned about the transitional level and discussed another possible surgical intervention for Plaintiff.

23. At a February 5, 2020 follow-up appointment, Dr. Madsen noted that both left and right S2 alar screws were loose and if the pain worsened, Plaintiff would need surgical intervention.

24. Plaintiff provided all of the above information and other medical records to the Defendant for its evaluation on or about October 21, 2020

25. On November 19, 2020, Plaintiff provided a signed medical authorization to the Defendant upon request from the Defendant.

26. At some point in its investigation, Defendant retained a radiologist, Dr. Bao Nguyen, to review the radiographs and imaging studies. Dr. Nguyen concluded that, by a review of the radiographs, Plaintiff did not sustain any acute injury in the subject motor vehicle collision.

27. As a result of Dr. Nguyen's report, Defendant denied the Plaintiff's UIM claim and concluded that he had been made whole by the $50,000 settlement from Great West.

28. Defendant provided Dr. Nguyen's report and the denial letter to Plaintiff on May 11, 2021.

29. On August 16, 2021, Mr. Fifer returned to Rocky Mountain Spine Clinic, where Dr. Madsen used to practice, prior to his leaving that clinic. In his stead, Plaintiff treated with a different spine surgeon, Dr. John Barker.

30. Dr. Barker reviewed the previous February 2020 imaging study, and he had concluded that both of Mr. Fifer's right and left alar screws were loose, and he ordered further imaging studies.

3

31. Plaintiff returned to Dr. Barker on August 30, 2021, which confirmed Dr. Barker's suspicion of the loosening of the screws, and they were actually getting looser and moving inside the bone. Dr. Barker therefore recommended surgical intervention in the form of extending the fusion from L5 to the sacrum. Plaintiff provided Defendant with a report from Dr. Barker regarding his findings.

32. In response to the denial and Dr. Nguyen's report, Plaintiff's counsel sent Dr. Nguyen's report to Dr. Barker for his review. Dr. Barker responded with his own report, dated December 2, 2021.

33. Dr. Barker explicitly stated in his report that he disagreed with Dr. Nguyen's conclusion that Mr. Fifer did not sustain an acute injury in the subject motor vehicle collision.

34. More specifically, Dr. Nguyen concluded that the lucency around the right S2 alar screw is of "no clinical significance." Dr. Barker disagreed with this statement. Dr. Barker found the fact that Plaintiff had a loose right S2 alar screw only 3.5 months after the surgery to be very clinically significant, and that Dr. Nguyen was not qualified to render such an opinion.

35. Dr. Barker also concluded, to a reasonable degree of medical probability, that the subject March 18, 2019 collision loosened Plaintiff's posterior sacral fixation, and due to this loosening, Plaintiff developed pain at his transitional segment, and these symptoms/injuries are what the recommended surgery was meant to address.

36. Plaintiff, by and through his attorneys, sent Dr. Barker's updated report to the Defendant on December 6, 2021.

37. The next day, December 7, Plaintiff's counsel received a phone call from the insurance adjuster assigned to the claim, Lynn Bacan. Ms. Bacan stated she had roundtabled the Plaintiff's claim and its decision had not changed: Plaintiff's claim was still being denied. Upon information and belief, Ms. Bacan did nothing to further investigate Plaintiff's claim before denying it again despite the new information provided to her.

38. Later, on December 20, 2021, Plaintiff received correspondence that the Defendant had retained counsel to assist with the ongoing investigation of the claim.

39. Subsequently, Plaintiff received correspondence from Defendant on January 4, 2022, requesting Plaintiff undergo an Independent Medical Evaluation ("IME"), with the date of the IME to be determined.

40. To Plaintiff's knowledge, this was the first effort by Defendant to consult with a qualified spine surgeon to opine on the causation of Mr. Fifer's claimed injuries.

41. Plaintiff later agreed to attend the IME with Dr. B. Andrew Castro, which occurred February 28, 2022 at 7:00 am. Among other findings, Dr. Castro concluded that the subject motor vehicle collision did not cause the need for any future surgical intervention.

4

42. Dr. Castro finalized his report on March 12, 2022 and it was provided to the Plaintiff on March 21, 2022.

43. On June 6, 2022, Defendant sent Plaintiff additional correspondence, including an addended report from Dr. Castro and Dr. Nguyen. Said correspondence informed Plaintiff that the Defendant provided a third and final denial of the claim.

**FIRST CAUSE OF ACTION**
**Breach of Contract Against Defendant**

44. Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 43 above.

45. At all times material to this lawsuit, Defendant was a corporation authorized to do, and doing business, in the State of Colorado.

46. At all times material to this lawsuit, the Plaintiff was insured under a statutorily compliant Colorado auto insurance policy issued by Defendant.

47. Upon information and belief, said policy contained within it a "direct action clause" and/or in the alternative provided for the filing of this action.

48. Plaintiff's insurance policy provided for uninsured/underinsured benefits to be made available to Plaintiff, which policy is believed to be in the possession of Defendant and which policy was in full force and effect at all times material to this lawsuit.

49. During the effective policy term, the subject motor vehicle collision occurred with the resulting injuries, damages and losses as set forth herein.

50. The subject collision gives rise to the payment of benefits for underinsured benefits for bodily injury suffered by Plaintiff in the collision with Mr. Jesson on March 18, 2019.

51. As such, when and at such time as an insured such as Plaintiff is injured by the negligent conduct of said driver, such constitutes conduct for which underinsured benefits are applicable to this cause.

52. As of the time of filing this complaint, Defendant has paid no benefits pursuant to his UIM coverage..

53. Further, during the pendency of the policy of insurance providing Plaintiff with underinsured benefits, Cole Jesson, herein referred to as an underinsured driver, did carelessly and negligently operate his vehicle so as to cause injuries, damages and losses to Plaintiff.

54. Mr. Jesson was the direct and proximate cause of severe, permanent, and disabling injuries of body, mind, and psyche, as are herein further described.

5

55. At all times material hereto, and at the time of the incident complained of, Plaintiff was operating his vehicle in a reasonable and safe fashion, such that he did not cause or contribute to cause the motor vehicle collision and is neither negligent nor comparatively negligent.

56. Plaintiff has complied with all conditions precedent to coverage under the insurance policy issued by Defendant to him.

57. Defendant has breached its contract by denying or failing to pay underinsured motorist benefits due under the policy.

58. As a direct and proximate result of the Defendant's breach of contract, Plaintiff has incurred damages as set forth herein.

## SECOND CAUSE OF ACTION
### Unreasonable Delay and Denial Against Defendant under C.R.S. § 10-3-1115 and C.R.S. § 10-3-1116

59. Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 58 above.

60. Plaintiff provided the Defendant with his reasonable surgical, orthopedic, hospital and related medical expenses caused by the March 18, 2019 collision.

61. This documentation was provided in accordance with the UIM coverage under the policy of insurance with Defendant.

62. Defendant has delayed and denied the claims without a reasonable basis, justification or explanation.

63. Defendant's denial or failure to pay UIM benefits was unreasonable when Defendant based its' decision to deny or fail to pay the claim based on a record review by a radiologist, who was not qualified to render an opinion based on whether the Plaintiff was injured in the subject motor vehicle accident or whether he was a surgical candidate. Dr. Nguyen, a radiologist, is not qualified to opine whether a patient needs surgery to obtain relief from lumbar spine pain and conducted no clinical examination of Plaintiff.

64. The denial or failure to pay first-party covered benefits was without a reasonable basis when the Defendant, knowing in 2020 that this case centered on the question of whether a patient who underwent a complicated lumbar spine fusion surgery in January of 2019, and was involved in a motor vehicle collision in March of 2019, decided to forego the opinions of a qualified spinal surgeon, disregard all available information regarding causation or injury and instead rest its decisions on the opinion of a radiologist.

6

65. The denial of or failure to pay first-party covered benefits was without a reasonable basis when the Defendant based its denial on the opinion of a radiologist who only reviewed imaging studies and never once talked to, met or performed an IME of the Plaintiff.

66. The denial of or failure to pay first-party covered benefits was without a reasonable basis when the Defendant received the December 2, 2021 report from Dr. Barker, which directly refuted the opinions of Dr. Nguyen, and took all of one day to again deny Plaintiff's claim.

67. The denial of or failure to pay first-party covered benefits was without a reasonable basis when the Defendant, made the decision to retain a spinal surgeon, Dr. Castro, to write his own report on the causation of Mr. Fifer's injuries, after it had already denied the claim two times and after it had allowed the opinion of a radiologist to overcome the opinion of two of Plaintiff's treating physicians, both well-respected orthopedic doctors.

68. The denial of or failure to pay first-party covered benefits was without a reasonable basis when the Defendant waited some 86 days to issue the third denial of the claim, on June 6, 2022, despite Dr. Castro's report being dated March 12, 2022.

69. Defendant has forced Plaintiff into litigation to reasonably resolve his claim for benefits.

70. The denial of or failure to pay covered benefits without a reasonable basis was a violation of C.R.S. § 10-3-1115, authorizing remedies to Plaintiff as provided by C.R.S. § 10-3-1116.

71. As a direct and proximate result of the Defendant's unreasonable delay and denial of benefits, under C.R.S. §§ 10-3-1115 and 10-3-1116, Plaintiff has suffered economic and non-economic damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Common Law Insurance Bad Faith
### *Directed against Defendant*

72. Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 68 above.

73. Based on the aforesaid described events, and by Defendant's repeated unreasonable decision to deny full benefits to Plaintiff as required under the insurance policy and Colorado law and wrongfully denying the contractual obligations under the policy, including, *inter alia*, failure to timely and adequately consider the opinions of qualified surgical doctors' opinion regarding the need for Plaintiff's surgery and the causation of the recommended surgery, wrongfully dismissing the opinions of those surgical doctors using only the opinion of an unqualified radiologist, failure to timely retain their own orthopedic doctor to assess Plaintiff's injuries, damages and losses, and other allegations contained herein.

7

74.     By the actions described herein, Defendant breached the contract of insurance and have engaged in a course of conduct to deprive its insured of the contractual benefits to which he is entitled.

75.     Defendant's standard of care falls below the standard of care of a reasonably prudent insurance carrier doing business in the state of Colorado and violates the insurance policy's implied duty of good faith and fair dealing.

76.     Defendant's unreasonable conduct in relation to Mr. Fifer's UIM claim was committed with knowledge of the fact that their actions were unreasonable and/or in disregard of the fact that their actions were unreasonable.

77.     Defendant's course of conduct breached their implied duty of good faith and fair dealing as described herein, and, further, was in violation of C.R.S. §§ 10-1-101 and 10-3-1104. Defendant's conduct also included the following unreasonable acts:

A. Refusing pay Plaintiff's UIM claim following a reasonable investigation based upon all available information;

B. Depriving Plaintiff of the benefit and protection of the insurance contract;

C. Failing to conduct, timely or otherwise, a complete investigation of the evidence;

D. Engaging in a one-sided investigation of the evidence;

E. Improperly acting in preference to its rights and interests at the detriment to Plaintiff;

F. Other conduct to be discovered through discovery.

78.     As a direct and proximate result of the Defendant's bad faith breach of insurance contract, Plaintiff has suffered economic and non-economic damages in an amount to be proven at trial.

## DEMAND FOR TRIAL BY JURY

79.     Plaintiff demands a trial by jury for all claims set forth herein.

**WHEREFORE**, Plaintiff, Bruce Fifer, requests that Judgment be entered in favor of the Plaintiff and against the Defendant, in an amount sufficient to fairly compensate him for the injuries, damages and loses as set forth above, statutory penalties, court costs, attorney fees, expert witness fees, statutory interest from the date this cause of action accrued, or as otherwise permitted under Colorado law, and for such other and further relief as this Court deems just and proper, and/or that Plaintiff prays for the following relief:

 (a) For an amount which will reasonably compensate him for past and future economic loss;
 (b) For an amount which will reasonably compensate him for medical expenses, past and future;
 (c) For an amount which will reasonably compensate him for permanent limitation, injuries, and/or disfigurement of the body and/or mind;
 (d) For an amount which will reasonably compensate him for pain and suffering, past and future and other non-economic damages;
 (e) For an amount which will reasonably compensate him for loss of the enjoyment life and/or the capacity to live a full life; and
 (f) For an amount related to Defendant's violation of C.R.S. § 10-3-1115 and C.R.S. § 10-3-1116 in accordance with the statutory laws of Colorado, including two times the covered benefit that have been wrongly and unreasonably withheld as statutory penalties under Colorado insurance law; and
 (g) For interest from the date of filing the Complaint to the date of verdict or judgment, and for costs and fees incurred in the prosecution of this matter, and any further and other relief as the Court may deem just and proper.

Respectfully submitted this 2nd day of December, 2022.

**RAMOS LAW**

/s/ *Ross S. Iakovakis*
Ross S. Iakovakis, #44104
*This pleading was filed electronically pursuant to Rule 121 § 1-26. Original signed pleading is on file in counsel's office.*

Plaintiff' Address:
c/o Ramos Law
10190 Bannock Street, Suite 200
Northglenn, Colorado 80260

9