**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-00294-NYW-CYC

BRUCE FIFER,

      Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

      Defendant.

_____

**OMNIBUS ORDER ON EVIDENTIARY MOTIONS**
_____

Pending before the Court are several evidentiary motions filed by the Plaintiff Bruce Fifer ("Plaintiff" or "Mr. Fifer") or Defendant Travelers Property Casualty Company of America ("Defendant" or "Travelers"):

(1)    Plaintiff's Motion to Strike Defendant's Expert Dr. Jens-Peter Witt as Cumulative and Duplicative ("Motion to Strike Witt") [Doc. 64, filed January 3, 2025];[1]

(2)    Plaintiff's Motion to Strike Defendant's Expert Dr. James Piko as Cumulative and Duplicative ("Motion to Strike Piko") [Doc. 65, filed January 3, 2025];

_____

[1] Where the Court refers to the filings made in Electronic Court Files ("ECF") system in this action, it uses the convention [Doc. ___] and uses the page number as assigned by the ECF system, except when citing from the transcript of a deposition. When citing the transcript of a deposition, the Court uses the ECF docket number but cites to the page and line numbers as assigned in the original transcript.

(3)    Defendant's Motion to Limit Testimony of Plaintiff's Non-Retained Treating Medical Providers and Exclude David Friedman D.C., D.A.B.C.O. ("Motion to Limit Treating Providers") [Doc. 66, filed January 3, 2025]; and

(4)    Defendant's Amended Motion to Exclude Opinions of Jeffrey Opp Pursuant to Federal Rule of Evidence 702 by Defendant Travelers Property Casualty Company of America ("Amended Motion to Exclude Opp") [Doc. 68, filed January 4, 2025].[2]

These evidentiary motions are fully briefed and ripe for review. The Parties have not requested an evidentiary hearing on any of these Motions. Upon review of the Motions, this Court respectfully concludes that oral argument will not materially assist in their resolution. For the reasons set forth herein, Plaintiff's Motion to Strike Witt is respectfully **DENIED**; Plaintiff's Motion to Strike Piko is respectfully **DENIED**; Defendant's Motion to Limit Non-Retained Experts is respectfully **GRANTED IN PART and DENIED IN PART**; and Defendant's Amended Motion to Strike Opp is respectfully **DENIED**.

## BACKGROUND

The following facts are drawn from the operative Complaint and are presumed to be true only for the purpose this Order, unless otherwise noted as admitted in the Answer.

---

[2] Defendant filed a Motion to Exclude Opinions of Jeffrey Opp Pursuant to Federal Rule of Evidence 702 by Defendant Travelers Property Casualty Company of America on January 3, 2025. [Doc. 67]. It is unclear why Defendant then filed its Amended Motion to Exclude Opp the following day, or whether it was filed with the consent of Plaintiff. *See* [Doc. 68]. Though it is not clear to which motion Plaintiff is responding because he never identifies a docket number associated with Defendant's motion, Plaintiff did not oppose the Amended Motion to Strike Opp on the grounds that it was filed after the deadline for the filing of motions pursuant to Rule 702 of the Federal Rules of Civil Procedure. [Doc. 54; Doc. 84]. Thus, this Court will proceed in considering the Amended Motion to Strike Opp, and respectfully **DENIES as moot** the Motion to Exclude Opinions of Jeffrey Opp Pursuant to Federal Rule of Evidence 702, [Doc. 67].

2

This action arises from an automobile collision between Mr. Fifer and a third-party, Cole Jesson ("Mr. Jesson"), that occurred on March 18, 2019.  [Doc. 5 at ¶¶ 6–8].  As Mr. Fifer and Mr. Jesson were both driving northbound on Santa Fe Boulevard in Denver, Colorado, Mr. Jesson rear-ended Mr. Fifer's 2017 Chevrolet Silverado.  [*Id.* at ¶ 8].  Mr. Fifer claims that because of the collision, he suffered "physical injuries, pain and suffering, loss of enjoyment of life, emotional distress, mental anguish, wage loss, and had to undergo rehabilitation."  [*Id*. at ¶ 9].

At that time, Mr. Fifer was covered for underinsured motorist ("UIM") coverage through a Travelers automobile insurance policy.[3]  [*Id.* at ¶ 10; Doc. 14 at ¶ 10].  Mr. Jesson carried bodily injury insurance through Great West Farm Bureau ("Great West") in the amount of $50,000 per person / $100,000 per collision.  [Doc. 5 at ¶ 11; Doc. 14 at ¶ 11].  By correspondence dated April 24, 2019, Mr. Fifer alerted Travelers of a possible UIM claim.  [Doc. 5 at ¶ 15; Doc. 14 at ¶ 15].  On September 14, 2020, Mr. Fifer settled with Great West for Mr. Jesson's policy limits of $50,000, with Travelers' approval.  [Doc. 5 at ¶ 12; Doc. 14 at ¶ 12].

Prior to the collision, Mr. Fifer had undergone a multi-level fusion of the lumbar spine on January 3, 2019, performed by Dr. Michael Madsen.[4]  [Doc. 5 at ¶ 16; Doc. 14 at ¶ 16].  Two days after the collision, on March 20, 2019, Mr. Fifer returned to see Dr. Madsen and complained of lower back pain.  [Doc. 5 at ¶ 18; Doc. 14 at ¶ 18].  Over the

---

[3] Travelers asserts that the UIM coverage was part of insurance policy no. DT-810-3J270942-TIL-18 to named insured Saunders Construction, Inc. ("Saunders").  [Doc. 14 at ¶ 10].  There appears to be no dispute of fact that Mr. Fifer was employed by Saunders and covered by its policy for the purpose of the instant collision.

[4] Plaintiff spells this physician's last name as both "Madsen" and "Madson."  *See e.g.* [Doc. 5 at ¶¶ 16, 18].  Because "Madsen" is more prevalent in both Parties' filings as well as Plaintiff's expert disclosures, *see* [Doc. 66-1 at 19–23], the Court utilizes that spelling.

following months, Mr. Fifer reported increasing pain and lack of sleep to his physicians.

[Doc. 5 at ¶¶ 21, 29].  Upon reviewing his CT scan, Dr. Madsen noted lucency[5] around

the distal end of the right S2[6] alar screw, and posited that the collision may have

"aggravated the transitional level."  [Doc. 5 at ¶ 20].  Further examinations appeared to

confirm that both S2 alar screws were loose, and eventually, moving inside the bone.  [*Id.*

at ¶¶ 23, 30–31].  Dr. John Barker, a physician who took over Mr. Fifer's care from Dr.

Madsen, recommended surgical intervention in the form of extending the fusion from L5

to the sacrum.  [*Id.* at ¶ 31].

Mr. Fifer provided this information and his medical records to Travelers and signed

a medical authorization for Travelers to obtain medical records from his providers.  [*Id.* at

¶¶ 24–25, 31].  Travelers engaged a radiologist, Dr. Bao Nguyen ("Dr. Nguyen") to review

Mr. Fifer's radiographs and imaging studies and Dr. Nguyen concluded that Plaintiff did

not sustain any acute injury as a result of the collision.  [*Id.* at ¶ 26; Doc. 14 at ¶ 26].

Travelers denied Mr. Fifer's claim for UIM benefits on May 11, 2021.  [*Id.* at ¶¶ 27–28].[7]

---

[5] "Lucency" is defined as a clear or translucent area.  *See Lucency*, Dictionary.com, https://www.dictionary.com/browse/lucency (last visited August 20, 2025).  Lucency can be a sign of possible loose hardware.  *See Fallon v. Astrue*, No. 3:10-cv-00044-WGH-RLY, 2011 WL 304786, at *2 (S.D. Ind. Jan. 26, 2011).

[6] S2 refers to the second sacral bone of the spine.  *See, e.g.,* Nachum Dafny, *Chapter 3: Anatomy of the Spinal Cord*, Neuroscience Online:  An Electronic Textbook for the Neurosciences (Oct. 7, 2020), https://nba.uth.tmc.edu/neuroscience/m/s2/chapter03.html (last visited August 20, 2025).

[7] Paragraph 28 of the Complaint alleges that "Defendant provided Dr. Nguyen's report and the denial letter to Plaintiff on May 11, 2021."  [Doc. 5 at ¶ 28].  In its Answer, Travelers states it "is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and, on that basis, denies the same."  [Doc. 14 at ¶ 28].  The Court is puzzled how Travelers is without knowledge of its own actions, i.e., whether it provided Dr. Nguyen's report and a denial letter to Plaintiff on May 11, 2021, when such information should clearly be in its possession, custody, and control.  The Court reminds Defendants of their obligations under Rule 11 of the Federal Rules of Civil Procedure that "[b]y presenting to the court a pleading, written motion, or other paper—whether by

Even after Mr. Fifer provided additional information and was subject to an Independent

Medical Examination ("IME") by a physician of Travelers' choosing, Dr. B. Andrew Castro

("Dr. Castro"), Defendant continued to deny Mr. Fifer's UIM claim.  [*Id.* at ¶¶ 31–43].

This action followed.  On December 2, 2022, Plaintiff filed a civil action alleging

claims for:  (1) breach of contract; (2) unreasonable delay and denial in violation of Colo.

Rev. Stat. §§ 10-3-115 and 10-3-116 ("statutory bad faith"); and (3) common law insurance

bad faith.  [Doc. 1-3 at 5–8; Doc. 1-4].  Travelers was served on January 3, 2023, [Doc.

1-2], and removed the case to the United States District Court for the District of Colorado

on February 1, 2023, [Doc. 1].  The operative claims remain the same.  [Doc. 5 at 5–8].

**LEGAL STANDARDS**

I.      **Rule 403**

Rule 403 of the Federal Rules of Evidence provides that:

> The court may exclude relevant evidence if its probative value is
> substantially outweighed by a danger of one or more of the following:  unfair
> prejudice, confusing the issues, misleading the jury, undue delay, wasting
> time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.  Courts have discretion under Rule 403 to exclude repetitive and

cumulative expert testimony.  *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071,

1173 (D. Colo. 2006) (first citing Fed. R. Evid. 403; and then citing *Marsee v. U.S. Tobacco*

*Co.*, 866 F.2d 319, 324 (10th Cir.1989)).  However, the United States Court of Appeals for

the Tenth Circuit ("Tenth Circuit") has instructed district courts that "exclusion of evidence

---

signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best
of the person's knowledge, information, and belief, formed after an inquiry reasonable
under the circumstances," that "the denials of factual contentions are warranted on the
evidence or, if specifically so identified, are reasonably based on belief or a lack of
information."  Fed. R. Civ. P. 11(b)(4).

under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010) (quoting *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001)).

## II.    Rules 26(a)(2)(B) and 26(a)(2)(C)

Rule 26(a)(2) governs the disclosure of expert testimony.  Generally, if an expert has been retained or specially employed for the purpose of providing expert testimony, a party must not only identify the expert witness, but also disclose a report that contains:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the facts or data considered by the witness in forming them;

(iii)   any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  If a party discloses an expert that has not been specially retained, a report is not generally required, but Rule 26(a)(2)(C) requires the identification of the subject matter upon which the witness is expected to present evidence and a summary of the facts and opinions to which the witness is expected to testify.  Fed. R. Civ. P. 26(a)(2)(C).

The District of Colorado has traditionally employed a burden-shifting analysis to determine whether the requirements of Rule 26(a)(2) have been satisfied.  *See, e.g.*, *Morris v. Wells Fargo Bank, N.A.*, No. 09-cv-02160-CMA-KMT, 2010 WL 2501078, at *2 (D. Colo. June 17, 2010).  The party moving to strike an expert witness bears the initial burden of showing that the disclosing party failed to comply with Rule 26(a)(2).  *Id*.  If the

moving party makes such a showing, the burden shifts to the disclosing party to demonstrate the sufficiency of the expert disclosures. *See id.*

A violation of Rule 26(a)(2) is addressed by the court pursuant to Rule 37(c) of the Federal Rules of Procedure. Rule 37(c)(1) of the Federal Rules of Civil Procedure provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)  may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B)  may inform the jury of the party's failure; and
> (C)  may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1). The determination as to whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the court. *Woodworker's Supply, Inc. v. Principal Mt. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). In exercising its discretion, the court's consideration is guided by the following four factors: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness. *Id.*

## III.  Rule 702

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and

(d)   the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As noted by the Advisory Committee when the Rule was first promulgated, "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge." Fed. R. Evid. 702 advisory committee's note.

It is well established that trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony or evidence admitted is not only relevant, but also reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that gatekeeper function, courts within the Tenth Circuit conduct a two-part inquiry. First, courts consider whether the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline by assessing the expert's qualifications and the admissibility of the proffered evidence, i.e., whether the reasoning or methodology underlying the testimony is reliable. *Cook*, 580 F. Supp. 2d at 1082 (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232–33 (10th Cir. 2005)). Second, courts look at whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder. *See id.* The party offering the expert opinion bears the burden of establishing its admissibility, including all foundational requirements, by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009) (en banc); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).

"Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). To that end, courts consider the following non-exhaustive factors in analyzing

whether a particular expert opinion meets the requirements of Rule 702, *Daubert*, and their progeny:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Id.* The analysis is opinion-centric, rather than expert-centric. *See Crabbe*, 608 F. Supp. 2d at 1221.

Additionally, although an expert witness's testimony must assist the jury to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function, *see Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). Nevertheless, "a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id.* at 809. Such testimony "is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Id.* at 809–10. If "the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based," however, "the testimony cannot be allowed." *Id.* at 810. Testimony that "articulates the ultimate principles of law governing the deliberations of the jury" is inadmissible. *Id.* at 808. And although the line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, it is settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).

Finally, Rule 703 "authorizes an expert to testify to an opinion even if that opinion is based on otherwise inadmissible facts or data, which at times may include out-of-court testimonial statements."  *United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012). In full, Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

## ANALYSIS

### I.    Motion to Strike Witt

Styled as Motion to Strike Witt, Plaintiff first contends that the expert opinions of Dr. Witt and Dr. Castro are duplicative and, therefore, one should be stricken, but then concedes "[i]t's nigh impossible to prevent Dr. Castro's opinions from being heard by the jury because of their importance in the pre-litigation timeline."  [Doc. 64 at 5, 8].  In support of his position, Mr. Fifer points the Court to what he identifies as the relevant portions of each physician's report.  [*Id.* at 6–7].  He argues that "Dr. Witt and Dr. Castro, both spine surgeons, are reaching the same conclusions."  [*Id.* at 8].  Travelers disagrees.  In its Response to Plaintiff's Motion to Strike Defendant's Expert Dr. Jens-Peter Witt as Cumulative and Duplicative ("Defendant's Opposition to Motion to Strike Witt"), Defendant distinguishes the opinions of the two physicians.  [Doc. 83 at 2, 5].  Specifically, Travelers states that it will rely upon Dr. Castro's opinions for the purpose of explaining its claim investigation, including Plaintiff's IME, and the reasonableness of its claim decision.  [*Id.*

at 2].  Travelers further represents that it will separately rely on Dr. Witt for his opinion that the collision did not cause Mr. Fifer's S2 alar screws to loosen.  [*Id.*].

This Court respectfully agrees that there are sufficient distinctions between the opinions proffered by Dr. Castro and Dr. Witt to preclude striking Dr. Witt at this juncture. As both Parties acknowledge, Dr. Castro performed an IME on Mr. Fifer at Travelers' request.  [Doc. 64 at ¶¶ 16–17; Doc. 83 at 1–2].  The report resulting from the IME at least partially informed Travelers' adjustment of Plaintiff's UIM claim.  [Doc. 64 at ¶ 18; Doc. 83 at 3].  Dr. Witt is a specially retained expert who will opine about causation.  [Doc. 83 at 3–4].  And to the extent that both doctors offer opinions regarding whether the collision could have caused the injury for which Mr. Fifer now seeks damages, this Court notes that Rule 403 does not mandate the preclusion of all overlapping testimony, but rather, only evidence "if its probative value is substantially outweighed by the undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Further, as other district courts have noted, Rule 403 is "a rule preventing cumulative testimony *at trial*, not the giving of cumulative testimony in reports[.]"  *Vantage Controls, Inc. v. Lutron Elecs. Co.*, No. 2:03-cv-00488-TC, 2005 WL 8175013, at *5 (D. Utah Dec. 5, 2005).  Like the *Vantage Controls* court, this Court finds it will be able to evaluate and address any concerns regarding the application of Rule 403 to the testimony of Drs. Witt and Castro at trial, subject to an appropriate, contemporaneous objection. Accordingly, Plaintiff's Motion to Strike Witt is respectfully **DENIED**.[8]

---

[8] This Court finds that Plaintiff's argument that the Scheduling Order mandates the exclusion of Dr. Witt to be not supported.  *Compare* [Doc. 64 at 8] *with* [Doc. 23 at 10–11].  Indeed, Plaintiff himself contemplated that his treating physicians might overlap in field of expertise.  [*Id.* at 11].  In this scenario, the focus of Rule 403 and this Court is not upon the field of expertise per se, but the specific, relevant evidence to be offered.

## II.    Motion to Strike Piko

In his Motion to Strike Piko, Mr. Fifer forwards a substantially similar argument with respect to the proposed testimony of Dr. Nguyen and Dr. James Piko ("Dr. Piko"), Defendant's specially retained radiologist.    [Doc. 65].    Plaintiff argues that both Dr. Nguyen and Dr. Piko will offer opinions that Mr. Fifer's CT scan does not, in fact, show any loosening of hardware associated with his spinal fusion.    *See* [*id.* at 6–8].  Defendant filed its Response to Plaintiff's Motion to Strike Defendant's Expert Dr. James Piko as Cumulative and Duplicative ("Defendant's Opposition to Motion to Strike Piko"), [Doc. 82], again distinguishing between the opinions of Drs. Nguyen and Piko.    Specifically, Travelers intends to offer Dr. Piko for his affirmative opinion that Plaintiff's imaging studies do not show any evidence of hardware loosening after the collision.  [*Id.* at 3].  While Dr. Nguyen will be offered to provide similar testimony in response to Plaintiff's retained expert, Dr. Joseph Ugorji ("Dr. Ugorji"), Travelers will also offer his "reports to explain its claim investigation and the reasonable basis for its claim decision." [9]  [*Id.* at 5].

For the same reasons as set forth above, this Court finds that there are sufficient distinctions between the opinions proffered by Dr. Nguyen and Dr. Piko to preclude the striking of Dr. Piko at this juncture.  Any objection based on Rule 403 is more appropriately raised, evaluated, and ruled upon at trial, with the benefit of actual testimony.  Accordingly, Plaintiff's Motion to Strike Piko is respectfully **DENIED**.

---

[9] It is not entirely clear whether Defendant intends to offer testimony from Dr. Nguyen about his evaluation, or whether it intends to only offer Dr. Nguyen's written reports.  The Court's conclusion encompasses both.

III.    **Motion to Limit Treating Providers**

In Defendant's Motion to Limit Treating Providers, Travelers seeks to preclude Dr. Madsen, Dr. Francis Crnkovich, David Friedman D.C., D.A.B.C.O. ("Dr. Friedman"),[10] Dr. Murray David Solsberg, and Dr. Lauren Lyman Williams M.D. ("Treating Providers") from testifying about (1) causation; (2) the medical bills of the provider were "reasonable and necessary; (3) opinions that were not described in the disclosure based on the provider's review of imaging studies or other medical records; and (4) rebuttal testimony. [Doc. 66 at 2]. Defendant contends that these topics were not adequately disclosed pursuant to Rule 26(a)(2)(C) and these Non-Retained Medical Providers did not provide reports compliant with Rule 26(a)(2)(B). [*Id.* at 8, 10]. Defendant further seeks to preclude Dr. Friedman, Mr. Fifer's treating chiropractor, from testifying because he was not made available for deposition. [*Id.* at 13].

Plaintiff's Response in Opposition to Defendant's Motion to Limit Plaintiff's Non-Retained Treating Medical Providers and Exclude Testimony of David Friedman D.C., D.A.B.C.O. ("Plaintiff's Opposition to Defendant's Motion to Limit Treating Providers") only addresses Defendant's arguments with respect to causation opinions and the requested

---

[10] While Plaintiff identifies Dr. Friedman as an "orthopedic surgeon" in his Expert Disclosures, [Doc. 81-2 at 25], Dr. Friedman is in fact, a licensed chiropractor, [*id.* at 24]. This Court observes that Travelers repeatedly refers to David Friedman, D.C., D.A.B.C.O. as "Mr. Friedman." *See* [Doc. 66; Doc. 81]. But the Court's understanding is that "D.C." refers to "doctor of chiropractic," who are licensed and regulated pursuant to Colo. Rev. Stat. §§ 12-215-101 to -202, and "D.A.B.C.O." refers to "Diplomate American Board of Chiropractic Orthopedists," a board certification that is awarded by the American Board of Chiropractic Orthopedists after advanced training and a national board examination. *See* Am. Coll. of Chiropractic Orthopedists, https://acco.wildapricot.org/ (last visited August 20, 2025). Accordingly, this Court refers to Dr. Friedman as a doctor consistent with the practice of other courts, *see, e.g., George v. Metro. Prop. & Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *4 (D. Colo. Jan. 2, 2020), and expects Defendant to do the same.

preclusion of Dr. Friedman.  *See* [Doc. 81].  Plaintiff argues that he disclosed that his Non-Retained Experts would testify as to causation in a timely fashion pursuant to Rule 26(a)(2)(C), and Defendant had an adequate opportunity to conduct discovery regarding those causation opinions.  [*Id.* at 3].  Plaintiff further contends that the causation opinions for Dr. Madsen and Dr. Friedman are contained in their respective treatment records, and that "the causation opinions of the Treating Providers are reliable as they are based upon Plaintiff's subjective complaints, the detailed medical history, and their objective physical examination results and/or interpretation of radiological imaging studies."  [*Id.* at 6, 9].  Finally, Plaintiff contends that there is no evidence that Defendant has been prejudiced as a result of the scope of Mr. Fifer's Rule 26(a)(2)(C) disclosures of his Non-Retained Medical Providers.  [*Id.* at 6–7].  As to Dr. Friedman's preclusion, Plaintiff objects on the basis that Dr. Friedman has retired, both Parties attempted to secure his deposition, and to the extent that Dr. Friedman is available to testify at trial, there is still an opportunity for Defendant to take Dr. Friedman's deposition.  [*Id.* at 9–10].

In Reply, Defendant points out that Plaintiff only addressed the Treating Providers' causation opinion in his Response to the Motion to Limit Treating Providers, and thus, the other topics are conceded.  [Doc. 85 at 1–2].  Travelers further insists that the Treating Providers' medical records do not provide sufficient notice of the basis for their opinions, and that the opportunity for Defendant to depose the various Treating Providers about their causation opinions does not cure the violation of Rule 26.  [*Id.* at 8].  Finally, Travelers argues that the potential ability to take Dr. Friedman's deposition at a later date does not cure its prejudice and as a result, the Court should strike him.  [*Id.* at 8–10].

### A.    Proper Scope of Treating Providers' Testimony

The Parties agree that generally, treating medical providers are not required to propound a report pursuant to Rule 26(a)(2)(B) in order to provide expert testimony pursuant to Rule 702 of the Federal Rules of Evidence. *See also Masa v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01279-WJM-NRN, 2021 WL 6052622, at \*1 (D. Colo. Dec. 21, 2021) (collecting cases). But the weight of authority in this District demonstrates that it is the substance of the opinions to be offered, rather than the categorization of the expert, that guides the Court's inquiry. *See, e.g.*, *Carbaugh v. Home Depot U.S.A., Inc.*, No. 13-cv-02848-REB-MEH, 2014 WL 3543714, \*3 (D. Colo. July 16, 2014) (Hegarty, Mag. J.); *Kemp v. Webster*, No. 09-cv-00295, 2012 WL 5289573, \*2 (D. Colo. Oct. 26, 2012) (Jackson, J.)*; Davis v. GEO Grp.*, No. 10-cv-02229-WJM-KMT, 2012 WL 882405, \*2 (D. Colo. Mar. 15, 2012) (Tafoya, Mag. J.); *Scholl v. Pateder*, No. 09-cv-02959-PAB-KLM, 2011 WL 2473284, \*3 (D. Colo. June 22, 2011) (Mix, Mag. J.); *see also Trejo v. Franklin*, No. 04-cv-02523-REB-MJW, 2007 WL 2221433, \*2 (D. Colo. July 30, 2007) (Blackburn, J.) (finding under former Rule that the substance of the expert's testimony, not the status of the expert, will dictate whether a Rule 26(a)(2)(B) report will be required). When an individual is testifying as to his percipient knowledge and opinions formed during his participation in the relevant events of the case, i.e., what he personally saw and did in the course of his employment, no report under Rule 26(a)(2)(B) is necessary. *Carbaugh*, 2014 WL 3543714, at \*3. But when an individual exceeds the scope of his own personal knowledge and observation, that expert should propound a report pursuant to Rule 26(a)(2)(B). *See id.* at \*4 (holding that when a treating physician relies even in part upon information provided outside of the course of treatment, such opinions must be disclosed

pursuant to Rule 26(a)(2)(B)).  Against this background, this Court turns first to the limitations to which Plaintiff does not appear to object, and then finally addresses Travelers' objection to causation opinions by Treating Providers.

### 1.    Billing

Applying these principles, this Court concludes that the Treating Providers may not provide testimony regarding the appropriateness of the billing associated with Mr. Fifer's treatment because Plaintiff has failed to establish that such billing is within each Treating Provider's personal knowledge and professional expertise or was within the treatment the Treating Providers rendered to Mr. Fifer.  *See George*, 2020 WL 70424, at *5; *Masa*, 2021 WL 6052622, at *6 (concluding that testimony by treating physicians regarding the reasonableness and necessity of their medical bills goes beyond their personal observations or treatment of plaintiff and are not formed as part of normal occupational duties)  Moreover, none of the summaries of testimony by Treating Providers discloses such opinions or the basis for any such opinions.  *See generally* [Doc. 81-2].  Indeed, Plaintiff does not argue in his Opposition to Defendant's Motion to Limit Treating Providers that he properly designated these Treating Providers for such purpose or intends to offer them for that purpose.[11]  *See* [Doc. 81].  And for purposes of Rule 37 of the Federal Rules

---

[11] Plaintiff makes a generic statement that "Mr. Fifer reserves the right to elicit opinion testimony from their retained and non-retained expert witnesses deemed to be reliable and relevant to the issues of damages and/or deemed to be helpful to the jury's understanding of the evidence or issues in the case."  [Doc. 81-2 at 3].  This conclusory statement is insufficient to satisfy either Rule 26(a)(2)(B) or Rule 26(a)(2)(C) and allow these Treating Providers to testify about billing.  However, the Treating Providers may testify, based on their examination(s) of Mr. Fifer (including his self-reports of pain and functional limitations) and their professional training and expertise, that particular medical treatment they prescribed or recommended during the ordinary course of treatment was reasonable and necessary to a reasonable degree of medical certainty.

of Civil Procedure, this Court finds that the lack of a formal expert report disclosing any of the Treating Providers as experts in medical billing, is not substantially justified or harmless, and would be prejudicial to Defendant.  Fed. R. Civ. P. 37(c)(1); *Woodworker's Supply*, 170 F.3d at 993.

**2.    Opinions that were not described in the disclosure based on the provider's review of imaging studies or other medical records**

The Court next turns to Defendant's objection to opinion testimony from the Treating Providers based on the provider's review of imaging studies or other medical records that was not described in the disclosure.  [Doc. 66 at 4].  Put another way, Travelers seeks to limit the trial testimony of Treating Providers to their treatment and disclosed medical records.  [*Id.* at 8].  Plaintiff does not appear to dispute this proposition. *See generally* [Doc. 81].  It is also consistent with the authority in this District.  *See*, *e.g.*, *Carbaugh*, 2014 WL 3543714, at *3.  To be clear, however, this Court will permit Treating Providers to testify to their treatment and opinions that are not expressly reflected in the disclosed medical records so long as they are within their respective percipient knowledge and treatment of Mr. Fifer, and so long as the opinions have been adequately set forth in their expert disclosures as part of the summary[12] of the facts and opinions to which the witness is expected to testify as contemplated by Rule 26(a)(2)(C)(i–ii).  [Doc. 81-1].  To the extent that there are specific objections that testimony arises outside of the appropriate scope of Rule 26(a)(2)(C), this Court finds that such objections are more appropriately resolved at trial after a contemporaneous objection.

---

[12] "A summary is defined as a brief account that states the main points of a larger body of information."  *Nicastle v. Adams Cnty. Sheriff's Off.*, No. 10-cv-00816-REB-KMT, 2011 WL 1674954, at *1 (D. Colo. May 3, 2011).

17

### 3.    Rebuttal Testimony

In Plaintiff's C.R.C.P 26(a)(2) [sic][13] Expert Disclosures, Mr. Fifer states the Treating Providers may offer rebuttal testimony should "the Defendants [sic] obtain an expert to rebut his opinions." *See* [Doc. 81-2 at 23, 25, 26, 27]. Defendant objects to the presentation of any rebuttal testimony by any Treating Provider, arguing that "Plaintiff did not disclose any opinions from his non-retained treating providers in rebuttal to the affirmative expert opinions disclosed by Travelers." [Doc. 66 at 4]. And Plaintiff does not address, let alone argue, that his Treating Providers may appropriately present rebuttal testimony based on his disclosures to date. *See generally* [Doc. 81].

Rebuttal witnesses are those who are "intended solely to contradict or rebut evidence on the same subject matter identified" by affirmative experts. Fed. R. Civ. P. 26(a)(2)(D)(ii); *EEOC v. JBS USA, LLC*, No. 10-cv-02103-PAB-KLM, 2013 WL 3302429, at *6 (D. Colo. July 1, 2013). Rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts. *Carroll v. Allstate Fire & Cas. Ins. Co.*, No. 12-cv-00007-WJM-KLM, 2013 WL 12426586, at *2 (D. Colo. Oct. 4, 2013) (citations omitted). "Under Rule 26(a)(2)(D), a rebuttal expert cannot be called to buttress a case-in-chief or advance new legal theories." *Hess v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-01397-CMA-MEH, 2024 WL 1012911, at *5 (D. Colo.

---

[13] Plaintiff invokes Colorado Rule of Civil Procedure 26(a)(2) in his expert disclosures. [Doc. 81-2]. Because this Court sits in diversity, it applies Colorado state substantive law but federal procedural law. *See Hanna v. Plumer,* 380 U.S. 460 (1965). Accordingly, Rule 26(a)(2) of the Colorado Rules of Civil Procedure and the Colorado state court cases cited by Plaintiff, *see, e.g.*, [Doc. 81 at 3, 6], may be persuasive, but are not biding authority on this Court.

Mar. 8, 2024) (citing *103 Invs. I, L.P. v. Square D Co.*, 372 F.3d 1213, 1217 (10th Cir. 2004)).

Applying these standards, this Court agrees that a Treating Provider cannot attack the opinions offered by Defendant's experts unless that provider has properly disclosed his or her opinions under Rule 26(a)(2)(B) or (C).  Put another way, while a Treating Provider may testify as to opinions that are contrary to the opinions Defendant's experts based on his percipient knowledge and opinions formed during his participation in the relevant events of the case, *Carbaugh*, 2014 WL 3543714, at *3, she or he cannot explain why the opinions of Defendant's experts are incorrect or opine on information beyond the Treating Provider's own observations, diagnoses, and treatment of Mr. Fifer, unless specifically disclosed to do so, in compliance with the Federal Rules.  And a Treating Provider may not simply rehash the testimony provided during a case-in-chief.  *Hess*, 2024 WL 1012911, at *6.  But again, this Court finds that specific objections to improper rebuttal testimony are more appropriately resolved at trial after a contemporaneous objection.

### 4.    Causation

Finally, the Court reaches the core of the dispute between the Parties with respect to Treating Providers, i.e., causation.  Each Party stakes a position at the ends. Defendant argues that opinions as to causation go beyond the Treating Provider's observations, diagnoses, and care of Mr. Fifer and that the medical records do not contain any medical causation analysis, so all the Treating Providers should be precluded from rendering opinions regarding causation.  [Doc. 66 at 10–11; Doc. 85 at 3-5].  In contrast, Plaintiff argues that "it was reasonable and necessary for [the Treating Providers] to

assess the cause of Plaintiff's reported symptoms so they would be effectively screen for probable injuries and to prepare for the potential severity of such injuries." [Doc. 81 at 5–6, 9]. Mr. Fifer further points out that Dr. Madsen and Dr. Friedman specifically included causation opinions within their medical records. [*Id.* at 7–8]. This Court concludes that the appropriate resolution of this issue is somewhere in the middle.

As an initial matter, Defendant cites no binding authority of the Tenth Circuit—and this Court could not independently find any—that there is a bright line rule that treating medical providers may not provide opinion testimony regarding causation without a report. Indeed, Travelers concedes that it "did not assert that a treating physician can ***never*** opine on causation." [Doc. 85 at 4 (emphasis in original)]. Rather, courts in this Circuit have recognized that "nothing suggests that these treating physicians are categorically barred from reaching a causation opinion within their medical expertise based on their care of [plaintiff] both before and after the [motor vehicle collision]." *Hess*, 2024 WL 1012911, at *8. Accordingly, it is most appropriate for the Court to consider the experts individually, beginning with the two that Plaintiff identifies in particular, i.e., Dr. Madsen and Dr. Friedman.

***Dr. Madsen***. Here, Dr. Madsen treated Mr. Fifer both before and after the March 18, 2019 collision. *See* [Doc. 81-2 at 19–23]. Plaintiff's Expert Disclosures specifically summarize Dr. Madsen's review of Mr. Fifer's imaging studies, from April 22, 2015 forward. [Doc. 81-2 at 20–23]. The summary further reflects Dr. Madsen's encounters with Mr. Fifer, including his surgery on January 3, 2019, and his follow-up visit on January 18, 2019, where Dr. Madsen determined that Mr. Fifer was healing well and recommended a three-month follow-up appointment in approximately April 2019. [*Id.* at

21].  The summary also reflects that Mr. Fifer saw Dr. Madsen two days after the collision,

and when Dr. Madsen reviewed imaging performed on April 10, 2019, he noted loosening

of the right S2 alar screw and then later, treated Mr. Fifer for ongoing pain.  [*Id.* at 22].

Travelers has not made an argument that Dr. Madsen's opinion about causation

is precluded by Rule 702 of the Federal Rules of Evidence based on lack of qualifications

or a faulty methodology.  [Doc. 66 at 8].  Rather, Travelers seeks to exclude Dr. Madsen's

causation opinion because it is beyond the scope of his medical records and he has not

propounded a report.  [*Id.*].  But Dr. Madsen provided significant medical treatment to Mr.

Fifer both before and after the collision, and his records allude to his opinion with respect

to the effect of the collision upon Mr. Fifer's healing from the spinal fusion surgery.  [Doc.

81-3 at 2].  Thus, he may rely upon his experience, training, and percipient knowledge

formed during his course of treatment of Mr. Fifer to testify about causation. *See Etherton*

*v. Owners Ins. Co.*, 35 F. Supp. 3d 1360, 1372 (D. Colo. 2014) (collecting cases reflecting

that "opinions of treating physicians on injury causation—based on medical knowledge,

physical examination, and patient histories—are routinely admitted in federal courts"),

*aff'd,* 829 F.3d 1209 (10th Cir. 2016); *Hubchik v. Owners Ins. Co.*, No. 23-cv-01359-DDD-

KAS, 2025 WL 902164, at *8 (D. Colo. Jan. 28, 2025); *Hess*, 2024 WL 1012911, at *11.

Travelers remains free to cross-examine Dr. Madsen about his opinion, and the basis for

such opinion, at trial.  *See Hubchik*, 2025 WL 920154, at *8.

***Dr. Friedman***.  The same conclusion does not extend to Dr. Friedman.  Dr.

Friedman did not see Mr. Fifer until after the collision, on July 26, 2019.  [Doc. 81-1].  His

opinion appears reliant upon Mr. Fifer's self-reporting and his physical observations.  [*Id.*].

While Plaintiff's Expert Disclosures indicate that he will testify about "a review of Mr. Fifer's

radiology films, past medical records and charts" as well as information received from other health care providers, there is no indication that Dr. Friedman reviewed any imaging or any prior medical records in his examination of Mr. Fifer. *Compare* [Doc. 81-2 at 24–25] *with* [Doc. 81-1]. Even if he had relied on other imaging or prior medical records of other physicians, such reliance would trigger the requirement of an expert report pursuant to Rule 26(a)(2)(B) under these particular circumstances. *See, e.g.*, *Masa,* 2021 WL 6052622, at *4; *George,* 2020 WL 70424, at *6. Here, Dr. Friedman's only percipient knowledge of Mr. Fifer comes from a single, post-collision examination that is insufficient to form the basis of a causation opinion. [Doc. 81-2 at 24; Doc. 81-1]. And even if Dr. Friedman was exempt from propounding a report, his summary is deficient, which is wholly deficient as to how he arrived at his opinion to allow such causation opinion. *See Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-cv-00191-PAB-STV, 2021 WL 4441518, at *2 (D. Colo. Sept. 28, 2021) ("A disclosure that states merely in a general way that the physician will testify as to their treatment or evaluations of the plaintiff, their observations, information contained within the medical records, and if a deposition is taken, any opinions expressed therein provides no identification of either facts upon which the non-retained experts are expected to rely, or the opinions that these individuals are expected to offer." (quotation omitted)).

Having found that Dr. Friedman should have propounded a formal expert report pursuant to Rule 26(a)(2)(B) to offer his causation opinion that "[i]t is my opinion within a reasonable degree of medical certainty that Mr. Fifer sustained bilateral sacroiliac and lumbosacral sprains as a direct result of the motor vehicle accident of March 18, 2019," [Doc. 81-1 at 2], the burden shifts to Mr. Fifer to show that a report was not required,

*Davis*, 2012 WL 882405, at *2. Based on the record before it, Mr. Fifer has not carried

this burden, and thus, this Court now turns to its analysis under Rule 37(c). Travelers

argues that allowing Plaintiff's Treating Providers, including Dr. Friedman, to testify as to

causation without a formal expert report would be prejudicial because (1) it permits

Plaintiff to circumvent the requirements of the rule; (2) puts Travelers at a disadvantage

in preparing for trial; and (3) Dr. Friedman's record does not explain the basis of his single

sentence opinion, "including whether he analyzed general causation, ruled out other

potential causes, or otherwise applied a reliable methodology to determine causation."

[Doc. 66 at 12; Doc. 85 at 5].

Applying the *Woodworker's* factors, 170 F.3d at 993, this Court concludes that

(1) Travelers is prejudiced by the opinion offered in Dr. Friedman's letter to counsel

because it not only does not comport with the requirements of Rule 26(a)(2)(B), but also

provides no basis for such opinion; (2) the deadline for expert reports pursuant to Rul

26(a)(2)(B) has long expired and Mr. Fifer identifies no good cause as to why it should be

extended; and (3) Travelers has no ability to cure the prejudice given Dr. Friedman's

unavailability as conceded in Mr. Fifer's Opposition to the Motion to Limit Treating

Providers, [Doc. 81 at 8–10]. Accordingly, Dr. Friedman will not be permitted to provide

any causation opinion, including but not limited to "Mr. Fifer sustained bilateral sacroiliac

and lumbosacral sprains as a direct result of the motor vehicle accident of March 18,

2019."

***Other Treating Providers***.  As to the remaining treating providers (Dr. Crnkovich,

Dr. Solsberg, Dr. Williams),[14] Plaintiff generally asserts that "the causation opinions of the

Treating Providers are reliable as they are based upon Plaintiff's subjective complaints,

the detailed medical history, and their objective physical examination results and/or

interpretation of radiological imaging studies."   [Doc. 81 at 9].   Dr. Crnkovich and Dr.

Solsberg are both board-certified physicians in radiology and neuroradiology whose

summaries do not disclose any causation opinions.  [Doc. 81-2 at 23–24, 25–26].  To the

extent either physician based any of his opinions on "review of Mr. Fifer's radiology films,

past medical records and charts as well as information received from either health care

providers," such review might be permissible if he relied upon such information during the

course of his treatment of Mr. Fifer.  But here again, Dr. Crnkovich and Dr. Solsberg's

disclosures are insufficient even to satisfy Rule 26(a)(2)(C) as they do not reflect that

these doctors formed any opinion during their treatment of Mr. Fifer.  *See Vanderlaan*,

2021 WL 4441518, at *5.  And to the extent that any opinions were formed outside of Mr.

Fifer's course of treatment with these doctors, Plaintiff was obliged to propound a report

compliant with Rule 26(a)(2)(B), and his failure to do so is not justified by any good cause.

Accordingly, neither Dr. Crnkovich nor Dr. Solsberg may testify as to any causation

opinion.

Dr. Williams is a board-certified internal medicine physician who was Mr. Fifer's

primary care physician.  [Doc. 81-2 at 26].  His summary indicates that "he will testify

consistent with and in accordance with those records," but gives no sense of any

---

[14] This Court does not include Dr. Barker, because he has been designated as both a
retained and non-retained expert.  [Doc. 81-2 at 19].

causation opinion, if any, are contained in those records.  [*Id.* at 27].  It is well-settled that a treating physician may not simply point to a large swath of information or rely simply on a patient's self-report for the cause of his injuries.  *See Vanderlaan*, 2021 WL 4441518, at *2, *5.  For the same reasons as applied to Drs. Crnkovich and Dr. Solsberg, Dr. Williams's disclosure is insufficient to allow him to testify as to any causation opinion.

### B.    Dr. Friedman

Travelers further moves to exclude Dr. Friedman's testimony in its entirety due to Dr. Friedman's unavailability because Mr. Fifer "failed to produce him for deposition." [Doc. 66 at 13].  Travelers invokes no Rule in making such request and admits that it does not move to preclude Mr. Friedman's testimony because the reason for his unavailability appears unreasonable.  [Doc. 85 at 9].  Dr. Friedman currently appears to be outside the subpoena power of this Court, and there is nothing in the record that suggests that Mr. Fifer is responsible for Dr. Friedman's unavailability, and without more, there is no basis to exclude Dr. Friedman from testifying about his percipient knowledge and treatment of Mr. Fifer at this juncture.

Thus, Defendant's Motion to Limit Treating Providers is **GRANTED IN PART and DENIED IN PART**.

### IV.    Amended Motion to Exclude Opp

Finally, the Court turns to Travelers' Amended Motion to Exclude Opp, in which it challenges economist Jeffrey Opp's opinion that Mr. Fifer lost income due to selling his shares upon his early retirement on January 1, 2020, instead of his intended retirement at age 70 on February 12, 2022.  [Doc. 68].  Travelers argues that Mr. Opp's methodology in calculating lost income from dividends/K-1 earnings is flawed and unreliable because

he simply averaged the income from 2017 and 2018, without accounting for 2019 due to Plaintiff's failure to provide him with his employer's share plan.  [*Id.*at 4–6].  Plaintiff opposes the exclusion of this opinion by Mr. Opp, arguing that Defendant "was more capable of producing the ownership agreement than Plaintiff the ownership agreement is the property of its insured, Saunders, which has a contractual duty to cooperate with Defendant's defense and also provide documents upon request to its UIM insurer, Defendant."  [Doc. 84 at 3].  Mr. Fifer further argues that he did not have access to the information that Mr. Opp indicated he needed, Travelers never requested the information from him, and in absence of that information, Mr. Opp appropriately used a reliable methodology based on the information that was available.  [*Id.* at 9–10].  On Reply, Travelers argues that Mr. Opp's opinion is fundamentally flawed because he made no adjustment for the money Plaintiff actually earned when he sold his shares and Mr. Fifer failed to address this second argument, so it is confessed.  [Doc. 86 at 3 (citing Doc. 68 at 8, 11–12)].

It is well established that trial courts are charged with the responsibility of acting as gatekeepers of expert testimony to ensure that expert testimony or evidence admitted is not only relevant, but also reliable.  *See Kumho Tire Co.*, 526 U.S. at 147–52; *Daubert*, 509 U.S. at 588–89.  To fulfill that gatekeeper function, courts within the Tenth Circuit conduct a two-part inquiry.  First, this court considers whether the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline by conducting a preliminary inquiry into the expert's qualifications and the admissibility of the proffered evidence, i.e., whether the reasoning or methodology underlying the testimony is valid.  *Cook*, 580 F. Supp. 2d at 1082 (citing *Bitler*, 400 F.3d at 1232–33).  Second, the

court considers whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder. *See id.* "Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Dodge*, 328 F.3d at 1222. The party offering the expert opinion bears the burden of establishing its admissibility, including the foundational requirements by a preponderance of the evidence. *Nacchio*, 555 F.3d at 1241; *Crabbe*, 556 F. Supp. 2d at 1220.

As an initial matter, Travelers' first argument on Reply, i.e., that Mr. Opp's opinion is fundamentally flawed because he did not account for what Mr. Fifer actually earned when he sold his Saunders shares, is somewhat disingenuous. While Defendant mentions in his introduction that Mr. Opp's income opinions must be excluded because "Plaintiff sold his shares for hundreds of thousands of dollars, which was not taken into account in Mr. Opp's calculations," this theory is never argued in any detail within the Motion to Exclude Opp. *See generally* [Doc. 68]. Significantly, the identical deposition testimony quoted by Travelers on the cited pages 8 and 12 does not clearly address whether Mr. Opp received information about what Mr. Fifer earned when he sold his Saunders shares:

```
12          Q.     All right. But the ultimate conclusion
13    that I'm going to from this, though, is that how much
14    Mr. Fifer gained or lost overall from the date of his
15    retirement and his selling out of the company and his
16    not getting dividends, that overall picture would
17    require you to have the share plan and know all this
18    information about what -- about, you know, what was
19    paid out by the shares, to determine his overall loss
20    or gain from retiring from the company, correct?
21          A.     Which is why I said, once I get the share
22    plan, I'll update my calculations accordingly.
23          Q.     But the answer to my question, though, is
24    yes, right?
25          A.     Correct.
```

```
1          Q.      Okay. And -- and that analysis has not
2    been done at this time because you don't have the share
3    plan, correct?
4          A.      Correct, sir.
```

[Doc. 68 at 8, 12].  The argument associated with this deposition testimony is about Mr. Opp's lack of access to the Saunders share plan, not Mr. Opp's lack of information about what Mr. Fifer actually earned when he sold the shares upon retirement.  *See* [*id*. at 4–12].  Thus, this Court respectfully declines to deem this theory confessed.

Next, the Court considers whether Mr. Opp's methodology can withstand the scrutiny of Rule 702.  The Parties agree that the methodology Mr. Opp utilizes is appropriate for the calculation of projected value of a future ownership share.  [Doc. 84; Doc. 86 at 2].  But Travelers urges the Court to exclude Mr. Opp's opinion based on that methodology, because Mr. Opp was calculating *past* lost income; knew a different methodology was more appropriate; and failed to use it because Mr. Fifer did not provide the inputs he needed for that methodology.  As a result, he defaulted into simply averaging 2017 and 2018 to estimate Mr. Fifer's lost income for 2019 rather than actually calculating it.  There seems to be no challenge to Mr. Opp's use of this methodology for 2020, 2021, and 2022.

Mr. Opp testified that absent information of what exactly the dividend payments were per share for 2020, 2021, and January to February 2022, the use of the average historical amount was appropriate as an estimate.  [Doc. 68-1 at 84:1–8].  Rule 702 "is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise."  Fed. R. Evid. 702 advisory committee's note to 2000 amendment (citing *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 160 (3d Cir. 1999) (expert testimony cannot be excluded simply because the expert uses one test rather

than another, when both tests are accepted in the field and both reach reliable results)), and Travelers does not offer any evidence or argument that the methodology is fundamentally flawed.  Rule 702 also does not require an expert to use the "best" or the "correct" methodology; expert evidence may be "shaky" yet admissible.  *See Cook*, 580 F. Supp. 2d at 1085 (citations and quotations omitted).  And despite Travelers' criticism of Mr. Fifer, based on the record before it, this Court cannot conclude that Plaintiff engaged in bad faith by failing to provide Mr. Opp with the Saunders share plan.[15]

Furthermore, while Mr. Fifer's failure to provide Mr. Opp with information regarding what he actually earned from the sale of his shares, that criticism goes not to the methodology, but to a variable input—which may be a proper basis for cross-examination, but not for exclusion.  *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1249, 1260–62 (10th Cir. 2014) (affirming district court's admission of expert testimony that party challenged based on "inappropriately selected variables and benchmark years based on what would yield the greatest damages"); *see also A-W Land Co. v. Anadarko E&P Co.*, No. 09-cv-02293-MSK-MJW, 2017 WL 4161278, at *3 (D. Colo. Sept. 20, 2017); *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, 2014 WL 983507, at *7 (D. Colo. Mar. 13, 2014).

Ultimately, the gaps and inconsistencies in Mr. Opp's analysis and opinions go to the weight of the evidence, not the admissibility, and this Court expects that it will be

---

[15] Travelers points to no evidence in the record that Mr. Fifer had the plan in his possession, custody, or control but intentionally withheld it from Mr. Opp.  See [Doc. 68; Doc. 86].  Absent a formal discovery request, this Court agrees that Travelers had no obligation to provide Mr. Opp such information—or even seek and produce it from Saunders, though the Court notes that either side could have informally requested or subpoenaed the share plan from Saunders directly.

attacked through the traditional means of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."  *Cook*, 580 F. Supp. 2d at 1085 (quoting *Daubert,* 509 U.S. at 596).  Accordingly, the Motion to Strike Opp is respectfully **DENIED**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    Plaintiff's Motion to Strike Defendant's Expert Dr. Jens-Peter Witt as Cumulative and Duplicative [Doc. 64] is **DENIED**;

(2)    Plaintiff's Motion to Strike Defendant's Expert Dr. James Piko as Cumulative and Duplicative [Doc. 65] is **DENIED**;

(3)    Defendant's Motion to Limit Testimony of Plaintiff's Non-Retained Treating Medical Providers and Exclude David Friedman D.C., D.A.B.C.O. ("Motion to Limit Treating Providers") [Doc. 66] is **GRANTED IN PART and DENIED IN PART** as set forth above; and

(4)    Defendant's Amended Motion to Exclude Opinions of Jeffrey Opp Pursuant to Federal Rule of Evidence 702 by Defendant Travelers Property Casualty Company of America [Doc. 68] is **DENIED**.

DATED:  August 21, 2025                        BY THE COURT:

_____
Nina Y. Wang
United States District Judge